IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 92-2062 |
| ) | |
| STATE OF TENNESSEE et al., ) | |
| ) | |
| Defendants, and ) | |
| ) | |
| PEOPLE FIRST OF TENNESSEE and ) | |
| PARENT-GUARDIAN ASSOCIATIONS ) | |
| OF ARLINGTON ) | |
| DEVELOPMENTAL CENTER, ) | |
| ) | |
| Intervenors. ) | |

ORDER ADOPTING REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE AND DENYING MOTION OF
DEFENDANTS STATE OF TENNESSEE ET AL. TO SUSPEND AND
DISCONTINUE ACTIVITY BY THE MONITOR'S OFFICE

Before the Court is the Report and Recommendation ("Report") of the United States Magistrate Judge on Defendants State of Tennessee et al.'s ("Defendants") Motion to Suspend and Discontinue Activity by the Monitor's Office.[1] (D.E. #2558.) The Report recommends that Defendants' motion to suspend activity by the Court Monitor's Office filed June 26, 2009 (D.E. #2429) be denied. Defendants filed objections to the Report on February 25, 2010, and Plaintiff United States of America ("United States") responded to Defendants' objections on March 4, 2010. For the reasons stated below, the

---

[1] Defendants' motion when originally filed also sought further discovery in support of their request to suspend the Court Monitor. The Magistrate Judge previously determined that aspect of Defendants' motion by separate order—a ruling which no party appealed.

Court **OVERRULES** Defendants' objections, **ADOPTS** the proposed findings of fact and conclusions of law contained in the Magistrate Judge's thorough and well-reasoned Report, and **DENIES** Defendants' motion.

## I. BACKGROUND[2]

In 1992, the United States filed the instant suit against the State of Tennessee ("State") and others because of unconstitutional conditions at the Arlington Developmental Center ("ADC"), a state-run facility for mentally retarded individuals. See United States v. State of Tennessee, 925 F. Supp. 1292, 1296 (W.D. Tenn. 1995). Following trial, the Court found that conditions at ADC violated the rights of its residents. The parties then negotiated and the Court approved the Remedial Order, which was crafted to address the violations found by the Court. Among its many provisions, the Remedial Order called for the appointment of a Court Monitor to be responsible for ensuring the State's compliance with the Remedial Order's terms. On December 13, 2000, Dr. Nancy K. Ray ("Dr. Ray") replaced Dr. Linda R. O'Neall as the Court Monitor, and Dr. Ray has served in that position ever since.

The present controversy arises from allegations by Defendants that Dr. Ray has engaged in misconduct suggesting that Dr. Ray has taken sides in this case against Defendants and that she can therefore no longer be considered a neutral agent of the Court. Defendants base their allegations on e-mail communications among Dr. Ray, counsel for Intervenor People First ("People First"), and others. More specifically, Defendants contend that these e-mail exchanges reveal that Dr. Ray has (1) recently encouraged People First to take certain positions in this litigation to challenge actions by

---

[2] The Court adopts in full and incorporates herein by reference the proposed findings of fact contained in the Magistrate Judge's Report, but the Court includes the following background summary to provide context for this order's discussion of Defendants' objections.

2

the State; (2) assisted People First in formulating its positions, including by forwarding People First information from the State; (3) referred or attempted to refer prospective clients to People First; and (4) received assistance from People First in drafting a letter to the Court, which eventually gave rise to a motion for contempt filed by People First.  In his Report of February 16, 2010, after carefully discussing each of the allegations made against Dr. Ray, the Magistrate Judge recommended finding that Dr. Ray's actions were not improper and thus that Defendants' motion be denied.  Defendants timely filed objections to the Report.

**II. DEFENDANTS' OBJECTIONS TO REPORT**

Defendants do not challenge any of the Report's proposed findings of fact. Instead, the objections interposed by Defendants are limited to the Report's proposed conclusions of law.[3]

**A. Standard for Evaluating Dr. Ray's Actions**

Defendants first argue that the Magistrate Judge applied the incorrect legal standard in evaluating Dr. Ray's actions.  According to Defendants, Dr. Ray is subject to the standard found under 28 U.S.C. § 455 for judicial officers, which requires, inter alia, disqualification of any judicial officer in a proceeding in which her "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  This is an objective standard that asks "whether another person with knowledge of all the circumstances might reasonably question the judge's impartiality."  Conway v. Vergos, 297 B.R. 116, 121 (W.D. Tenn.

---

[3] The Court notes that part of the Report's proposed findings of fact recounts and relies upon Dr. Ray's testimony in the District Court during the hearing of July 6 through 9, 2009.  In that testimony, Dr. Ray explained the reasons for each of her actions.  The Court credits Dr. Ray's testimony and the explanations she provided for proceeding as she did.

3

2003). The standard established by § 455(a) extends to special masters under Rule 53 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 53(a)(2).

The Court agrees with the Magistrate Judge's Report that Dr. Ray should not be held to the "appearance of partiality" standard of § 455(a). She is not acting as a judicial officer, nor—as the Report's analysis explains—does Dr. Ray have the powers and duties of a special master. Rather, the Court agrees with the Report that a more liberal standard should be applied to review of Dr. Ray's activities. That standard, roughly articulated, is whether the Court Monitor has ceased to act as a neutral agent of the Court. As the Report notes, the fact that Dr. Ray is tasked with policing the State's compliance with the Court's orders necessarily means that her actions will often appear adversarial to the State and thus more aligned with the interests of the State's opponents in this case—the United States and People First. Moreover, the Remedial Order expressly contemplates that the Court Monitor will engage in ex parte communications and other informal contact that would generally be inappropriate for a judge or special master.

Defendants cite two cases, which, they argue, demand a more stringent standard. The Court agrees with the United States, however, that these cases differ from the present action in significant respects. One of those cases, Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996), involved court-appointed experts whose ex parte contacts with the judge prior to trial necessitated his recusal under § 455 and removal of the experts from their judicial appointment under Federal Rule of Evidence 706. Edgar, 93 F.3d at 261; see Fed. R. Evid. 706(a) ("The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon

4

by the parties, and may appoint expert witnesses of its own selection."). Indeed, the issue in Edgar largely centered on the effect of the contacts on the *judge* rather than their effect on the experts. In the instant case, however, the Court Monitor is expressly permitted certain ex parte contact with the Court and the parties. Defendants also cite an order from United States v. City of Detroit, Case No. 03-72258 (E.D. Mich.) (Order of July 24, 2009). This order does not state what standard should be applied in evaluating the actions of a court monitor, but simply concludes that the court should accept the resignation of its monitor because she had engaged in conduct that the court found "totally inconsistent with the terms and conditions of the two Consent Judgments in this litigation."[4] Id. at 1. Even if Dr. Ray's communications with People First in this case were unwise, they can hardly be deemed "totally inconsistent" with her duties.

Having found error neither in the Magistrate Judge's legal standard nor in his application of that standard to the facts, the Court finds Defendants' remaining objections to be moot.

**B. Future Guidance**

In the alternative, Defendants ask the Court to provide guidance going forward as to what standards should govern the Court Monitor's conduct. The Report likewise recommends that the parties consider amending the Remedial Order to more clearly define the Court Monitor's duties and her limitations. Defendants' request for greater clarification is not without merit, but the Court finds that it should not issue those directives on its own at this time without the benefit of consultation with the parties. If the parties desire to jointly clarify the parameters of the Court Monitor's duties and any

---

[4] The order in the City of Detroit case is far from detailed in describing what the monitor's misconduct entailed and what provisions of the court's orders she violated.

restrictions on her activities and then submit those proposals to the Court, the Court is certainly willing to consider them as possible modifications or amendments to the Remedial Order.

The expenditure of too much energy and effort on such a project, however, should be avoided. Just as this case must someday end, the office of Court Monitor was never intended to continue indefinitely. It is the Court's hope, and presumably the hope of the parties, that there will soon come a point in this litigation when the services of a court monitor will be unnecessary because the State has satisfactorily established its ability to comply with its legal obligations without the extensive monitoring currently in place. That day has not yet arrived, but the State will surely hasten its arrival if it accomplishes the orderly closure of ADC and the creation of an effective and reliable network of services for mentally disabled individuals in West Tennessee.[5]

## III. CONCLUSION

After considering the Report, Defendants' objections, the response of the United States, and all relevant filings made of record, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court. Defendants' objections are **OVERRULED**, and Defendants' motion is **DENIED**.

**IT IS SO ORDERED**, this the 23rd day of March, 2010.

                                                s/Bernice Bouie Donald
                                                **BERNICE BOUIE DONALD**
                                                **UNITED STATES DISTRICT JUDGE**

---

[5] Furthermore, the State might consider a role for local ombudsmen to ensure quality and assist in resolving problems that may arise regarding the scope or nature of the services the State provides.